Filed 5/23/16  P. v. Clation CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TYRONE CLATION,<br><br>    Defendant and Appellant. | F068254<br><br>(Super. Ct. No. MF009466A)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Colette M. Humphrey and John S. Somers, Judges.

Jessie Morris, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Tyrone Clation was convicted of battery by a prisoner on a correctional officer (Pen. Code, § 4501.5).[1]  In addition, the court found true enhancements alleging defendant served two prior prison terms (§ 667.5, subd. (b)), and suffered a prior strike conviction (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)).

Defendant was sentenced to a term of nine years in state prison.  He received four years for the substantive offense, which was doubled for his prior strike conviction, and one year for one of two prior prison terms.  The court struck the other prior prison term enhancement.

Defendant contends the trial court erred in denying his posttrial motion brought pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  In his motion, defendant sought substitute counsel for sentencing or, in the alternative, a new trial based on ineffective assistance of counsel.  Defendant primarily asserts defense counsel failed to investigate and present a defense on his mental illness.

Defendant also seeks appellate review of personnel records pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to determine whether any relevant documents were improperly withheld from disclosure by the trial court.  We find no error with respect to defendant's *Marsden* motion, and no material subject to disclosure pursuant to *Pitchess*.  The judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 2010, Carla Pendleton and Shane Thomas, correctional officers at Tehachapi State Prison, were collecting food trays from inmate cells.  Defendant, an inmate at the prison, was temporarily housed in administrative segregation.

As Pendleton reached into the food port on defendant's cell door to retrieve an empty food tray, defendant grabbed her left wrist and started yelling.  Pendleton

---

[1]All undesignated statutory references are to the Penal Code unless otherwise indicated.

struggled with defendant, but he would not release her. Thomas pepper sprayed defendant. When defendant refused to comply, Pendleton pepper sprayed defendant. Defendant covered his face with a blanket and let go of Pendleton's wrist. Pendleton sustained slight bruising and redness as a result of the incident.

Correctional Officer Hector Ortega was in a housing unit control booth during the incident. His version of events corroborated Pendleton's and Thomas's version.

Defendant did not testify in his own defense. However, he maintained throughout trial proceedings he did not grab or provoke Pendleton. He claimed the officers pepper sprayed him without provocation. At trial, defense counsel presented evidence of the dimensions of the cell door and food port, presumably, to support defendant's claim he could not have grabbed Pendleton.

Throughout the course of his trial, defendant brought seven *Marsden* motions seeking substitution of counsel and one *Faretta* motion (*Faretta v. California* (1975) 422 U.S. 806) seeking to represent himself. The hearings pursuant to these motions are summarized below.

### First Pretrial Marsden Motion

On February 7, 2012, defendant brought a *Marsden* motion against his court-appointed defense counsel, Joseph King. Defendant disputed information in King's declaration attached to his *Pitchess* motion. He maintained he did not touch Pendleton, but the declaration indicated he had for purposes of self-defense. The trial court explained the nature and purpose of a *Pitchess* motion and denied the *Marsden* motion.

### Second Pretrial Marsden Motion

On March 14, 2012, defendant brought a *Marsden* motion against King. At the time of the hearing, defendant was released on parole, but was awaiting trial at Lerdo, a pretrial detention facility. Defendant alleged King was not properly defending him and was urging him to take a plea deal. He primarily asserted King was not providing him with a defense of defendant's choosing; he would not file motions defendant wanted him

to, and he would not subpoena witnesses. In his opinion, King was attempting to get defendant to take a plea, which he was not going to do. Defendant also wanted a color photo of Pendleton's injuries, rather than the black and white photo available.

King explained he did not have a legal basis to file the motions defendant wanted him to bring. He informed the trial court a private investigator, Bruce Binns, had been appointed in defendant's case. King also stated a subpoena was served on the prison to identify alleged inmate witnesses in two cells adjacent to defendant's cell. The trial court found no breakdown in communication between defendant and King and no merit to defendant's other claims. Defendant's motion was denied.

### Faretta Motion

On August 31, 2012, a *Faretta* hearing was held pursuant to a motion by defendant. Defendant wanted to relieve King as his attorney and to represent himself. A lengthy colloquy occurred between defendant and the trial court concerning the implications of self-representation. The court explained it would be almost impossible for defendant to negotiate a plea deal if he represented himself. Defendant maintained he was not willing to accept a plea offer, although he acknowledged the maximum sentence in his case could be 10 years.

The trial court reviewed defendant's *Faretta* waiver. One question on the waiver form asked defendant whether he had ever been treated for any emotional or mental illness. Defendant answered "yes." The court inquired what defendant was suffering from and defendant responded he had experienced depression, stress, and posttraumatic stress. Defendant indicated his condition would not prevent him from representing himself. He stated he was paroled to a state hospital for treatment, and he was taking medication for restlessness, sleep, depression, pain, diabetes, high blood pressure, and high cholesterol.

The trial court asked defendant whether any of the medications he was taking would affect his ability to think. Defendant responded Benadryl might, because it causes

4.

him to be drowsy. The trial court inquired whether the side effects from his medications would prevent defendant from representing himself. After further discussion about whether defendant wanted to bring a *Marsden* motion instead of a *Faretta* motion, defendant indicated there was no reason he could not represent himself. The court found defendant mentally competent to represent himself and granted his motion.

### Third Pretrial Marsden Motion

In November 2012, defendant waived his *Faretta* rights and received court-appointed counsel, Arturo Revelo.

On February 25, 2013, defendant filed a *Marsden* motion against Revelo. Defendant claimed neither Binns, his investigator, nor Revelo, were making an adequate effort to locate alleged inmate witnesses to the incident. Defendant also complained he had only seen Revelo twice since Revelo was appointed. Defendant stated he did not receive any discovery in response to a *Pitchess* motion filed, and his defense failed to get measurements and take additional pictures of the trays and food port at the prison.

The trial court advised defendant he did not receive documents in response to his *Pitchess* motion because the trial court found no relevant materials subject to disclosure. Revelo explained the California Department of Corrections and Rehabilitation (CDC) was unable to locate the alleged inmate witnesses, and all pictures the defense needed for trial had been obtained. The trial court denied defendant's motion.

### Fourth Pretrial Marsden Motion

On July 31, 2013, defendant brought a *Marsden* motion against Revelo. Defendant claimed Revelo declined his direction and guidance in the case. He wanted Revelo to deliver letters he had written to the trial court, which Revelo was unwilling to do. Defendant also wanted Revelo to file a motion to compel against the CDC because the prison was refusing to disclose the names of the alleged inmate witnesses to the incident.

Revelo explained he had no legal basis to give the court ex parte communications. In addition, Revelo expressed the opinion defendant was attempting to act as codefense in his case. Defendant's case was straightforward—he either assaulted Pendleton or he did not. To prove defendant was falsely accused, as he claimed, Revelo reconstructed the scene of the incident. He had a mockup prison door built, he purchased a tray similar to the tray defendant was using, and he obtained a canister of pepper spray comparable to the size CDC uses. Revelo indicated defendant was unwilling to take any plea offers, and he wanted to go to trial. He explained to the trial court the inmate witnesses had not been located.

The court denied defendant's motion, finding Revelo had diligently pursued a defense in defendant's case.

### Fifth Pretrial Marsden Motion

On September 4, 2013, just prior to trial, a *Marsden* hearing was held. Defendant stated he had been at the Lerdo facility for the past 22 months. He asserted Revelo came to see him there only once, and he was unable to contact Revelo. He told the trial court he wanted to file his own motions, including a motion to suppress. He also complained his inmate witnesses had still not been located.

Revelo advised the trial court defendant appeared to want to represent himself, but not represent himself at the same time, and that defendant's conduct appeared to be a calibrated effort to delay his trial, in hopes the charges against him would evaporate. He stated a motion to suppress was not filed because there were no issues to suppress, and he explained the alleged inmate witnesses could not be identified. He advised the trial court defendant had filed a complaint against him to the California State Bar and, as a result, Revelo went to see him again.

The court denied defendant's motion.

### Sixth Marsden Motion

On September 11, 2013, a jury convicted defendant of the offense charged.

On September 12, 2013, a postconviction *Marsden* hearing was held. Defendant raised complaints about defense counsel being unable to locate his inmate witnesses. He also claimed defense counsel should have filed various motions, but refused to do so, and discovery documents were not given to him. Defendant complained defense counsel's mockups and exhibits were not convincing, and Revelo failed to make appropriate objections during trial. Revelo was, in defendant's opinion, trying to disassemble defendant's defense strategy.

Revelo responded defendant had access to all discovery in defense counsel's possession because he represented himself during a portion of the trial proceedings. Revelo claimed the investigator went to great lengths to get measurements critical to defense counsel's exhibits. He also related to the trial court defendant brought various paperwork to trial, against Revelo's advice. According to Revelo, when defendants bring documents to court, juries often view them as professional criminals.

The trial court denied defendant's *Marsden* motion. In so doing, the court explained defense counsel did everything possible to locate the inmate witnesses, but they could not be found. The court observed defense counsel and the defense investigator made thorough and considerable efforts to prepare defendant's case, which the trial judge noted, appeared to be a straightforward case. Although defendant had strong opinions as to how his case should have been presented, the court found defendant and defense counsel appeared to work together "quite well" and did not find a breakdown in communication.

### Defendant's Inmate Records

On October 15, 2013, over a month after defendant was convicted, Revelo received a package in the mail from defendant containing various inmate records. Two of the documents were CDC mental assessments of defendant, based on interviews conducted on December 30, 2010, and April 28, 2011, by CDC mental health clinicians.

Both assessments are one-page in length and contain three questions. The April 2011 assessment, being more recent to defendant's hearing, is summarized as follows.

Defendant was interviewed on April 28, 2011, by mental health clinician K. Disney, Ph.D. The assessment asked the following: (1) whether any mental health factors would make it difficult for defendant to understand the disciplinary process and represent his interests in the hearing such that he would need staff assistance. The "yes" box was checked, with an explanation indicating defendant "is [Enhanced Outpatient Program] status, [and] staff assistance is recommended." (2) Whether, in the clinician's opinion, defendant's mental disorder appeared to contribute to the rules violation. "Yes" was indicated, with an illegible two-sentence handwritten response. (3) If defendant were found guilty of the offense, whether there are any mental health factors the hearing officer should consider in assessing a penalty. The box marked "Yes" was checked, followed by an illegible one-sentence handwritten response.

The documents also indicated defendant was paroled to a state hospital for mental health treatment under section 2962, and that defendant was on Enhanced Outpatient Program (EOP) status on November 23, 2010. EOP is a prison inpatient care program for mentally ill inmates. The document was signed by defendant on July 22, 2011.

Other documents indicated defendant had involuntarily received psychotropic medications between October 6, 2010, and September 26, 2011, pursuant to *Keyhea v. Rushen* (1986) 178 Cal.App.3d 526 to treat bipolar disorder and antisocial personality disorder. One of the documents stated defendant had a history of depression, irritable moods, auditory hallucinations, and chronic suicidal ideation. Defendant was also identified as being a danger to himself.

On October 18, 2013, Revelo filed a statement in mitigation for sentencing in defendant's case and attached the documents to the statement.

### Seventh Marsden Motion/Motion for New Trial

On October 22, 2013, the trial court held a hearing, referred to by the trial court as a *Smith* hearing (*People v. Smith* (1993) 6 Cal.4th 684), on defendant's request for substitute counsel for sentencing or, in the alternative, a new trial based on ineffective assistance of counsel. Defendant asserted Revelo failed to timely submit documents to the trial court regarding his mental illness. However, defendant conceded the relevant documents had been in his possession and he had only recently disclosed them to Revelo. He claimed he previously sent the documents to Joseph King, his former attorney.[2]

Revelo advised the trial court the documents in King's possession were not prison medical records, but had to do with the alleged inmate witnesses. Revelo stated there was no indication defendant had medical records in his possession, or that the records were relevant to his case. Revelo knew defendant was receiving medical treatment for an unspecified mental illness, but he did not know the details of defendant's condition or that defendant had been involuntarily medicated at one point.

At some unspecified date, Revelo became aware defendant had documents in his possession related to his mental health. When investigator Binns went to retrieve the documents from defendant, defendant refused to come out of his cell, claiming he was sick. Defendant subsequently changed his mind, tried to contact Binns, and when he could not, he mailed the documents to Revelo. Once Revelo received the documents, he filed a statement in mitigation of defendant's sentence.

---

[2]At oral argument, counsel for defendant stated that King advised the trial court he misplaced documents defendant had mailed him after he moved offices. Following argument, counsel submitted a transcript citation on this point.

The record indicates the documents King misplaced were not defendant's inmate mental health records, but were letters between King and defendant. King advised the court defendant should have copies of these letters. When asked by the trial court whether any motions, reports, transcripts, or any other documents were not turned over to defendant after defendant's *Faretta* motion was granted, King responded, "No."

Revelo opined if he had known the contents of the medical records, he would have argued defendant had been tortured because he had been intentionally deprived of medical treatment. Under this theory, he would have argued defendant grabbed Pendleton's wrist out of necessity, so that he could see a psychiatrist or psychologist for medical treatment. However, he acknowledged this theory directly contradicted defendant's claims he never touched Pendleton.

According to Revelo, defendant was in control of the records and was now using them in an apparent attempt to secure a new trial. Revelo did opine, after some equivocation, defendant's mental illness may have impacted his ability to assist with his defense:

> "The information was in the hands of [defendant]. He controls this, and now he pulls it out as if he—as if in doing so he's going to secure himself a new trial because of ineffective assistance of counsel, but the fact remains that he concealed the information and when we made an attempt to get it he [would] not cooperate. Why would he do so? [¶] … I have no clue. [H]e will have to answer to that.

> "Is it perhaps as a result of his medical condition? … I'm a little confused as to whether or not I should have a doubt considering what happened with this paper, and perhaps that's what I should do, consider perhaps that this is part of this psychosis or diagnoses in mental health that has caused him to become unable to assist in the defense of his case.

> "Are his failures to communicate, this willful failure[] to communicate and to conceal information part of his psychosis? Is that again something that will detract on his ability to assist his defense? Those are things that I don't know.

> "Perhaps what I should do now is declare a doubt inasmuch as he has obviously [been] unable to assist counsel, not only me but Mr. King, and cooperate with the investigator that has been working with him since the onset of this case even when he was representing himself. That's my response."

The trial court denied defendant's motion for a new trial for several reasons. First, the court found Revelo zealously represented defendant at trial, citing Revelo's use of

10.

demonstrative evidence and his vigorous cross-examination of the witnesses. Second, the court noted the inmate records were from 2010 and 2011, more than two years prior to defendant's hearing, and were, therefore, not relevant to defendant's current mental state. Finally, the court found although the records were not immediately obtained by Revelo, this was not demonstrative of a breakdown in communication—Revelo brought the documents to the court's attention immediately after he received them. The court found no basis for defendant's ineffective assistance of counsel claim.

The trial court also denied defendant's motion for a new trial. The court explained the records had little relevancy to defendant's current mental state. In addition, nothing in the records suggested defendant lacked the requisite intent to commit battery, a general intent crime, or that he met the standard of legal insanity at the time of the incident.

Revelo moved for a section 1368 competency hearing. The trial court found no basis for ordering a section 1368 evaluation.

In addition to the age of the documents, the court explained it had considerable interaction with defendant throughout trial proceedings. Defendant appeared to be a knowledgeable and interested party in his defense, and he was capable of participating in the preparation of his own defense more so "than the average criminal defendant …." In the court's view, if defendant had not withdrawn his *Faretta* rights, he would have been capable of representing himself throughout trial.

## DISCUSSION

### I. Defendant's *Marsden* Motion

On appeal, defendant claims the trial court erred in denying his posttrial *Marsden* motion. Defendant contends Revelo rendered ineffective assistance of counsel by failing to investigate defendant's mental illness, failing to extinguish defendant's false belief he was under a civil commitment and not a prison commitment, which prevented him from taking a plea offer, and failing to gather basic documents.

11.

When a defendant seeks substitution of counsel based on inadequate representation, the trial court must permit the defendant to explain the basis of his or her contention and to relate specific instances of counsel's alleged inadequate performance. A defendant is entitled to relief if the record clearly demonstrates counsel failed to provide competent representation, or the defendant and counsel have become embroiled in an irreconcilable conflict from which ineffective representation is likely to result. The decision whether to grant a substitution of counsel is within the discretion of the trial court. We will not find abuse of discretion unless the failure to substitute appointed counsel substantially impaired the defendant's right to effective assistance of counsel. (*People v. Roldan* (2005) 35 Cal.4th 646, 681, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

If the defendant's claim of inadequate representation relates to events the trial court observed, the court will generally be able to resolve the new trial motion without appointing new counsel. If the defendant's assertion of inadequate representation relates to matters that occurred outside the courtroom, and the defendant makes a colorable claim of inadequacy of counsel, the trial court may, in its discretion, appoint new counsel to assist the defendant in moving for a new trial. (*People v. Smith*, *supra*, 6 Cal.4th at pp. 692-693.) Where there is a conflict between claims made by the defendant and his or her defense counsel, the trial court is entitled to accept defense counsel's representation. (*Id.* at p. 696.)

### A. Defendant's Mental Competency

On appeal, defendant contends Revelo rendered incompetent counsel by failing to investigate his mental illness. We are not persuaded.

Due process is violated when an incompetent defendant undergoes a criminal trial. (*People v. Lightsey* (2012) 54 Cal.4th 668, 690.) A defendant is incompetent to stand trial if the defendant lacks the ability to rationally consult with defense counsel, or the

defendant cannot understand the nature of the legal proceedings against him or her. (*Ibid.*) A defendant is presumed competent unless proven otherwise by a preponderance of the evidence by the party alleging incompetency. (*People v. Blacksher* (2011) 52 Cal.4th 769, 797.)

Defendant claims Revelo failed to investigate and present a defense relating to his mental illness. We initially observe, even in death penalty cases, defense counsel is not under a "blanket obligation to investigate possible 'mental' defenses." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1244.) To establish counsel's investigative omission constituted ineffective assistance, a defendant must demonstrate "'counsel knew or should have known' further investigation might turn up materially favorable evidence." (*Ibid.*)

Although Revelo was aware of the fact defendant was receiving treatment for an unspecified mental illness prior to receiving the documents in defendant's possession, he had no reason to suspect a meritorious defense may have been available. Evidence of a defendant's mental incompetence may come from irrational behavior, demeanor, and prior mental evaluations. (*People v. Murdoch* (2011) 194 Cal.App.4th 230, 236.) From the record, it appears defendant had the ability to consult with his attorney with rationality, to understand the nature of the legal proceedings and charges against him, and that he was capable of assisting with his defense.

Before Revelo's appointment, the trial court found defendant mentally competent to represent himself at trial. While defendant represented himself, he filed a successful motion for continuance with the court, he sought discovery materials, and he requested minute orders from prior hearings. In addition, during the course of trial proceedings, defendant coherently argued seven *Marsden* motions before the trial court. Based on transcripts from five of the *Marsden* hearings, defendant had frequent and intelligible conversations with the trial court in Revelo's presence.

13.

Once Revelo received the records from defendant, he submitted them to the court in mitigation of defendant's sentence and moved to have defendant's mental competency examined pursuant to a section 1368 motion. Revelo's statement in mitigation indicated defendant's mental health status was not previously explored because he did not appear to fall within the parameters of section 1368. This conclusion is supported by the fact defendant's competency was not raised by either Revelo or King at any point prior to Revelo's receipt of the records.

During the same hearing when Revelo requested a competency evaluation of defendant, he also candidly expressed his view defendant's conduct in furnishing the records just prior to sentencing appeared to be a strategic effort to obtain a new trial. After some equivocation, Revelo stated defendant's mental competency may have resulted in an inability to assist with his defense, and he moved for a competency evaluation. Based on Revelo's statements, we infer the section 1368 motion was made out of an abundance of caution, rather than an admission defendant made a colorable claim of inadequate representation.

In addition, although defendant expressed multiple grievances about working with Revelo, it appears not that he was unable to assist with his defense, but that he was unwilling. During his successive *Marsden* motions, defendant made numerous complaints to the trial court indicating he disagreed with Revelo's defense strategy. He believed Revelo should have filed additional motions, made more objections at trial, and subpoenaed alleged inmate witnesses—even though CDC documents in defendant's possession confirmed the witnesses could not be located. Revelo repeatedly advised the trial court defendant was trying to act as codefense in his case.

We find no facts from which it can be reasonably inferred Revelo should have suspected a meritorious defense was available. Defendant demonstrated an understanding of the nature and purpose of the proceedings, his role in them, and that he was capable of assisting Revelo with his defense. Although it appears defendant

14.

disagreed with Revelo's trial strategy, we do not find *Marsden* error based on tactical disagreements. (*People v. Dickey* (2005) 35 Cal.4th 884, 922.)

To the extent Revelo was aware defendant had an unspecified mental illness, he did not know the scope of defendant's condition. The records, which revealed defendant's prior mental health issues, were in defendant's possession. When investigator Binns went to collect the records from defendant, defendant refused to furnish them. He cannot now claim defense counsel failed to adequately investigate his mental illness when the records relevant to his condition were in his possession. "[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*People v. Smith*, *supra*, 6 Cal.4th at pp. 696-697.)[3]

Even assuming Revelo did not sufficiently investigate defendant's mental health, defendant has failed to prove prejudice as a result. Absent evidence defendant's mental illness might have provided a viable defense at trial, defense counsel's actions could not amount to ineffective assistance of counsel. (*People v. Murdoch*, *supra*, 194 Cal.App.4th at p. 236.) The trial court here examined the CDC documents and made an explicit ruling denying defendant's *Marsden* motion, finding no basis to conclude defendant was incompetent to stand trial or that the trial court should order a section 1368 competency evaluation.

The court explained nothing in the records demonstrated defendant lacked the requisite criminal intent to commit the offense. Pursuant to CALCRIM No. 2723, to prove battery by a prisoner (§ 4501.5), the People must prove (1) the defendant willfully touched the victim, a nonprisoner, in a harmful or offensive manner; (2) the defendant was serving a sentence in a state prison during the offense; (3) the victim was not serving

---

[3]Defendant asserts he attempted to bring documents to Revelo at trial, but Revelo refused to accept them. According to a statement made by defendant to the trial court, the documents he attempted to bring to Revelo were CDC operations manuals related to the use of pepper spray, not his inmate mental health records.

a sentence in state prison; and, (4) the defendant did not act in self-defense. Evidence of a defendant's mental health will not support a diminished capacity defense if the crime is a general intent crime, and battery is a general intent crime. (*People v. Glover* (1967) 257 Cal.App.2d 502, 505; *People v. Thurston* (1999) 71 Cal.App.4th 1050, 1054.)

The trial court also held the records failed to suggest defendant would have met the standard for legal insanity at the time of the offense. Although the records indicate defendant was diagnosed with a mental illness, "'[a] person may be mentally ill or mentally abnormal and yet not be legally insane.'" (*People v. Coddington* (2000) 23 Cal.4th 529, 608, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13.)

Finally, the trial court determined the records failed to provide a sufficient basis for ordering a section 1368 competency evaluation. A trial court's duty to suspend criminal proceedings arises only when there is a doubt as to a defendant's competency to stand trial, not when there is merely a doubt as to the existence of a mental disorder or developmental disability that does not implicate a defendant's competency to stand trial. (*People v. Romero* (2008) 44 Cal.4th 386, 420.) When there is substantial evidence a criminal defendant is incompetent, the court must grant a section 1368 motion. Where there is less than substantial evidence, the trial court still has discretion to order a competency hearing. The trial court's decision is given great deference because it has had the opportunity to observe the defendant during trial. (*People v. Kaplan* (2007) 149 Cal.App.4th 372, 383.)

The trial court held while the records did bear some relevance as to defendant's mental health, they had limited relevance as to defendant's present mental state because the records were over two years old. We concur with the court's observations and, in addition, note the content of some of the records, specifically the CDC mental clinicians' assessments of defendant, have little relevance upon whether defendant was competent to stand trial.

In December 2010 and April 2011, two assessments by CDC mental health clinicians indicated defendant's mental condition may have contributed to the offense. Where a qualified mental health expert testifies under oath and with particularity that, after examining the defendant, it is the expert's professional opinion the defendant is not capable of understanding the criminal proceedings against him, assisting with his defense, or cooperating with defense counsel, there is substantial evidence the defendant is incompetent to stand trial. (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 465.) The one-page, three-question assessments here, however, do not constitute the opinion of experts who, under oath, express an opinion defendant was incompetent to stand trial.

The assessments, in addition to the other records supplied by defendant, fall short of the substantial evidence standard that would have imposed a mandatory duty on the trial court to order a competency hearing. Moreover, in declining to order a competency hearing based upon the trial court's discretion, we find no abuse. Although the records suggest defendant was suffering from a mental illness, the records alone do not suggest he was incompetent to stand trial.

The trial court considered the records, Revelo's assessment of defendant's competency, in addition to its own observations of defendant, and determined a competency hearing was neither required nor warranted. In light of the totality of these factors, we find no abuse of discretion with respect to the trial court's decision.

## B.     Ineffective Assistance of Counsel for Plea Bargaining

Defendant also claims ineffective assistance of counsel based on Revelo's failure to extinguish defendant's false belief he was civilly committed, rather than incarcerated, causing defendant to reject a plea offer. We reject defendant's claim.

As the Attorney General explains, this issue was raised for the first time on appeal. Further, there is also no indication defendant believed he was under a civil commitment, rather than a criminal incarceration. Although Revelo expressed some confusion on this

issue during defendant's sentencing hearing, the prosecutor immediately clarified the section 969b packet, which evidenced defendant's prior prison terms, established defendant was a criminal inmate when he committed the instant offense.

In addition, defendant repeatedly and emphatically indicated he was unwilling to accept a plea offer.[4]  "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." (*Missouri v. Frye* (2012) 566 U.S. __ [132 S.Ct. 1399, 1409].)  There is simply no indication defendant would have accepted a plea offer, even assuming he did believe he was under a civil commitment.

### C.    Ineffective Assistance of Counsel for Failure to Gather Basic Documents

Defendant also contends the records in his own possession demonstrate defense counsel was incompetent in failing to gather basic documents related to defendant's mental health.

Inmate records, particularly medical records, are not basic documents.  Such records are not subject to disclosure without written authorization by an inmate, unless otherwise provided by law.  (Cal. Code Regs., tit. 15, § 1205.)  As noted, the records at issue were in defendant's possession.  Defendant does not explain how Revelo could have otherwise obtained them without defendant's cooperation.

Moreover, once Revelo obtained defendant's inmate records, the trial court determined the records did not support a prima facie claim for a competency hearing, nor

---

[4]Prior to trial, defense counsel made a counteroffer to plead guilty to a misdemeanor, section 148 (resisting arrest).  We reject defendant's contention the counteroffer somehow demonstrated he believed he was under a civil commitment.

did they support an insanity defense. Accordingly, even if Revelo had erred, we would find no prejudice as a result.

## II.   *Pitchess* **Ruling**

The trial court (Judge Humphrey) granted a *Pitchess* motion filed by defense counsel, seeking the personnel records of Pendleton and Thomas. During an in camera hearing, the trial court asked the custodian of records for CDC whether she found any documents related to complaints of fabrication or dishonesty in the records of Thomas and Pendleton. The custodian replied she did not. After reviewing the records, the trial court found no relevant materials subject to disclosure.

The parties agree we need to independently review Pendleton's and Thomas's personnel records to determine whether there is information relevant to their credibility. Because Thomas's and Pendleton's veracity is material to defendant's claim that he did not touch Pendleton, the credibility of both officers is at issue.

Upon review of the records, we find no documents subject to disclosure.

### DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
HILL, P.J.


_____
LEVY, J.